BALDWIN CO-OPERATIVE CREAMERY ASS'N v. WILLIAMS, Internal Revenue Collector.

(District Court, W. D. Wisconsin.  May 5, 1916.)

INTERNAL REVENUE ☞16—"ADULTERATED BUTTER."

> Act May 9, 1902, c. 784, § 4, 32 Stat. 194 (Comp. St. 1913, § 6233), defines "adulterated butter" to be any butter in the manufacture or manipulation of which any process or material is used with intent or effect of causing the absorption of abnormal quantities of water, milk, or cream. A regulation of the Commissioner of Internal Revenue, approved by the Secretaries of the Treasury and Agriculture, provides that butter having 16 per cent. or more of moisture contains an abnormal quantity and is adulterated butter.  Butter manufactured by plaintiff in the usual manner, without intent to cause the absorption of abnormal quantities of water, contained, according to some of the tests, slightly over 16 per cent. of water.  *Held*, that it was not adulterated butter within the statute, and the tax imposed on plaintiff as a manufacturer of adulterated butter, together with the penalty, was improper, and might be recovered.

> [Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. ☞16.
>
> For other definitions, see Words and Phrases, First and Second Series, Adulterate.]

At Law.  Action by the Baldwin Co-operative Creamery Association against Burt Williams, Collector of Internal Revenue.  Judgment for plaintiff.

Richmond, Jackman & Swansen, of Madison, Wis., for plaintiff.

John A. Aylward and A. C. Hoppmann, U. S. Attys., both of Madison, Wis., for defendant.

### Findings of Fact.

SANBORN, District Judge.  (1) That on or about August 12, 1914, the Baldwin Co-operative Creamery Association shipped to Messrs. Pitt, Barnam & Co., of New York 179 tubs of salted butter and 45 tubs of unsalted butter; that said butter was received at New York on or about August 18, 1914; that 5 tubs of said unsalted butter were sold to S. S. Long & Bro.; and that 2 of said tubs so sold were seized by John W. Sinzel, United States revenue agent.

(2) That in November, 1914, the Baldwin Co-operative Creamery Association was assessed $550 as special tax as a manufacturer of adulterated butter, together with 50 per cent. penalty, amounting to the sum of $275, and $12 stamp tax, making a total of $837; that said sum of $837 was paid on the 12th day of December, 1914, by said Baldwin Co-operative Creamery Association, under protest; that

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

on December 23, 1914, a petition was filed for review and refund; and that on March 19, 1915, the application for refund was overruled.

(3) That said butter was manufactured by the Baldwin Co-operative Creamery Association in the most approved manner; that said Baldwin Co-operative Creamery Association, in the manufacture and manipulation of said butter, used no process or material with the intent or effect of causing the absorption of any abnormal quantity of water.

(4) That said butter contained less than 16 per cent. of moisture.

Upon the foregoing findings of fact it was decided as follows:

Section 4 of the act of May 9, 1902 (32 Stat. 194, c. 784 [U. S. Compiled Statutes 1913, § 6233]), defines adulterated butter to be any butter in the manufacture or manipulation of which any process or material is used with intent or effect of causing the absorption of abnormal quantities of water, milk, or cream. A regulation of the Commissioner of Internal Revenue, approved by the Secretaries of the Treasury and of Agriculture, provides that butter having 16 per cent. or more of moisture contains an abnormal quantity, and is classed as adulterated butter. The butter in question in this case was examined by a revenue agent, and found to contain slightly over 16 per cent. of moisture. Other tests showed slightly less.

Under the statute it must appear that there was an intent to cause the absorption of an abnormal quantity of water. The testimony, however, shows that the butter was honestly made, and that there was no intent to adulterate it or produce an abnormal quantity of water. The butter was honestly made, in the ordinary way, and it also appears that there was nothing in the manipulation or manufacture which caused the product to contain more than 16 per cent. of water. It appeared in evidence that it was very difficult under some conditions to obtain butter having less than 16 per cent. water. In the absence of any intent to adulterate the butter, or produce an abnormal quantity of water, it was held that the case was not within the statute.